IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3152-FL

| ANTWAN DANIELS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| J. NICHOLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion for summary judgment (DE # 43) pursuant to Federal Rule of Civil Procedure 56 of defendants Bobby Martin ("Martin") and Winfort Nichols ("Nichols").[1] Also before the court are the motion for the court to set a date for trial (DE # 53), motion for reconsideration (DE # 54), and motion for entry of default (DE # 55) filed by plaintiff Antwan Daniels ("plaintiff"). Finally, before the court are defendants' motion to strike plaintiff's motion for entry of default (DE # 57), motion to strike plaintiff's request for alternative dispute resolution (DE # 63), and motion to strike plaintiff's motion in reply (DE # 64). These matters are ripe for adjudication.

## STATEMENT OF THE CASE

On September 8, 2009, plaintiff filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against defendants, alleging that Nichols used excessive force against him in violation of the Fourteenth Amendment of the United States Constitution. Plaintiff also alleges that defendants were

---

[1] Plaintiff incorrectly referred to defendant Winfort Nichols as J. Nichols. The court will hereinafter refer to the defendant J. Nichols as Winfort Nichols.

deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment of the United States Constitution. On August 19, 2010, defendants filed a motion for summary judgment, arguing that plaintiff's claims are without merit. Plaintiff filed a response on September 7, 2010, and defendants filed a reply on September 24, 2010. On October 7, 2010, plaintiff filed a pleading captioned supplemental response. Plaintiff thereafter filed a motion for the court to set a date for a trial, a motion for reconsideration, and a motion for entry of default. Defendants thereafter filed a motion to strike plaintiff's motion for entry of default, a motion to strike plaintiff's request for alternative dispute resolution, and a motion to strike plaintiff's motion in reply.

## STATEMENT OF THE FACTS

On December 10, 2006, the Elizabethtown Police Department received a call reporting a shoplifting incident at the Food Lion grocery store located at 1202 W. Broad Street in Elizabethtown, North Carolina. (Nichols Aff. ¶ 3.) The report stated that the alleged suspect had stolen a large package of ribeye steaks from the grocery store. (Id. ¶ 4.) Nichols responded to the call in his marked patrol vehicle. (Id. ¶ 3.)

When Nichols arrived at the scene, he observed plaintiff on foot in the parking lot behind the Citgo gas station adjacent to the Food Lion parking lot. (Id. ¶ 5.) Nichols determined that plaintiff fit the description of the suspect. (Id.) Nichols then stopped his patrol vehicle and spoke with plaintiff. (Id. ¶ 6.) Nichols asked plaintiff if he knew anything about the theft from the Food Lion. (Id.) Plaintiff responded by running from the scene. (Id. ¶ 7.) Nichols then began to pursue plaintiff on foot. (Id.) Nichols called for assistance, and Sergeant Jeremy Humphries responded to the call. (Id.)

As plaintiff was attempting to climb over an approximately six foot tall chain link fence, Nichols caught up with him. (Id. ¶ 8.) Nichols then pulled plaintiff from the fence, causing both he and plaintiff to fall to the ground. (Id. ¶¶ 8-9.) Nichols and plaintiff struggled briefly after the fall until Nichols was able to take control of plaintiff and apply handcuffs. (Id. ¶¶ 7-9.) Plaintiff states that Nichols "braced" his knee into plaintiff's left arm, while he was in handcuffs, breaking plaintiff's arm. (Def.'s Ex. K. p. 13.) Plaintiff also states he was being held at gunpoint when his arm was broken. (Id.) Plaintiff further states that he requested medical attention at the time of arrest, but that Nichols told him "shut up before he hurt [his] other arm." (Compl. p. 4.)

After apprehending plaintiff, Nichols transported him back to the Food Lion where the store manager positively identified him. (Nichols Aff. ¶ 11.) Nichols then transported plaintiff to the Bladen County Jail. (Id.) Nichols states that he was not aware that plaintiff had been hurt in the course of the arrest. (Id. ¶ 12.)

On December 10, 2006, plaintiff complained about wrist pain. (Def.s' Ex. I.) The jail staff responded by calling nurse Susan Butler ("Nurse Butler"). (Id.) Nurse Butler advised the jail staff to provide plaintiff with an ice pack and ibuprofen for his pain. (Id.) Nurse Butler further informed the jail staff that she would examine plaintiff the following morning if he still was complaining of pain. (Id.) Plaintiff refused any further medical treatment on December 10, 2006. (Id.)

The next day, the jail nurse examined plaintiff at approximately 10:15 a.m. (Id.) The nurse noted that plaintiff could not move his left arm and that his left wrist looked deformed. (Id.) The nurse also noted that plaintiff's right eye was swollen, that he had redness around his eyebrow, and that he had tenderness over his forehead. (Id.) Finally, the nurse noted that plaintiff was not cooperative, and that he had refused to go to the Bladen County Hospital Emergency Department

the previous day. (Id.) Following his examination, plaintiff was transported to the Bladen County Hospital Emergency Department. (Id.)

Plaintiff was examined by a physician's assistant when he arrived at the Bladen County Hospital. (Id. Ex. B.) Plaintiff's arm was x-rayed and he was diagnosed with a fractured wrist.[2] (Id.) Plaintiff was given a splint and a sling, and prescribed ibuprofen to be taken as needed. (Id.) Plaintiff also was instructed to follow up with Atlantic Orthopedic in one to two days. (Id.)

On December 12, 2006, prison officials transported plaintiff to Atlantic Orthopedics. (Id. Ex. G.) Atlantic Orthopedics recommended that plaintiff have surgery to repair the fracture in one to one and one half weeks. (Id.) Plaintiff then was transported back to the jail. (Id.)

On December 13, 2006, Bladen County District Court Judge Warren modified plaintiff's bond from a secured bond to an unsecured appearance bond, and plaintiff was released from the jail's custody. (Id. Ex. D.) Plaintiff states that Judge Warren agreed to release him if he agreed to pay for his own medical bills. (Compl. p. 4.) On December 13, 2006, plaintiff signed a document stating that he received an injury to his left arm and right eye in the course of his arrest on December 10, 2006. (Def.s' Mem. Ex. E.) The document further stated:

> I understand that I refused to go to Bladen County Hospital ED on my o[wn] accord on December 10, 2006 for treatment of my arm after being offered by [O]fficer Jones and [t]he Elizabethtown Police Department. I accept full responsibility for my health care upon my release from jail and will seek medical and surgical intervention as soon as I am released knowing that I have been advised by Atlantic Orthopedics to have surgery on my forearm within one and one and a half week time.

(Id.)

---

[2] The court notes that plaintiff's medical records at time refer to plaintiff's injury as both a wrist injury and a forearm injury. (See Exs. B and C.)

4

After his release, plaintiff returned to Atlantic Orthopedic for his follow up visit. (Def.s' Mem. Ex. K, p. 61.) Plaintiff states that Atlantic Orthopedic informed him that he could not have surgery on his wrist until he obtained medical insurance. (Id.) Plaintiff was in the process of obtaining medical insurance through the Department of Social Services when he was re-arrested and taken into custody on January 10, 2007. (Id. Exs. K pp. 48-49 and J.) On January 11, 2007, the jail physician repeated plaintiff's x-rays and re-assessed his condition. (Id.) On January 17, 2007, a Bladen County trial judge ordered that plaintiff be transferred to Central Prison in Raleigh, North Carolina for safekeeping and to be held for surgery. (Id. Ex. F.) On March 22, 2007, plaintiff had surgery to repair his fractured wrist. (Def.s' Mem. Ex. C.)

## DISCUSSION

A.  Motion to Set a Trial Date

Plaintiff requests that the court set a trial date for this action. Should the court determine that a trial is necessary in this action, the court will set a trial date at the appropriate time. Accordingly, plaintiff's motion is DENIED as premature.

B.  Motion for Entry of Default

Plaintiff requests that the court order the Clerk of Court to make an entry of default against defendants in this action. In response, defendants filed a motion to strike plaintiff's request for entry of default.[3]

Federal Rule of Civil Procedure 55(a) provides that the Clerk of Court must make an entry of default where: "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. . . ." Defendants are

---

[3] The court construes defendants' motion to strike as a response to plaintiff's motion for entry of default.

5

allowed thirty (30) days following the response of North Carolina Prisoner Legal Services ("NCPLS") to answer or otherwise respond to the complaint. NCPLS responded to this court's order of investigation on April 29, 2010. Both Martin and Nichols filed their answers prior to NCPLS' response to the court's order of investigation, and thus, prior to the date their answers were due. As a result, plaintiff's motion for entry of default is DENIED, and defendants' motion to strike is DENIED as moot.

C.   Plaintiff's Request for Alternative Dispute Resolution

Defendants move pursuant to Federal Rule of Civil Procedure 12(f) for this court to strike plaintiff's request for alternative dispute resolution.[4] Defendants assert that the content of plaintiff's motion does not support his request for alternative dispute resolution. In particular, defendants assert that plaintiff's motion does not appear to be a motion for alternative dispute resolution, but, instead, appears to be a request for authorization to obtain medical treatment. The court finds that plaintiff's motion requesting alternative dispute resolution is unclear, and is unable to determine what plaintiff is requesting. Accordingly, the court DENIES plaintiff's request for alternative dispute resolution.

D.   Motion to Strike Plaintiff's Motion in Reply

On January 31, 2011, plaintiff submitted a reply to Martin's answer. Martin requests that this court strike plaintiff's reply pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) states: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed.

---

[4] The court construes defendants' motion to strike as a response to plaintiff's motion for alternative dispute resolution.

6

Case 5:09-ct-03152-FL   Document 65   Filed 02/25/11   Page 6 of 15

R. Civ. P. 12(f). Martin filed his motion to strike within twenty-one (21) days of being served with plaintiff's reply. Thus, the motion to strike is properly before the court.

The court now must determine whether plaintiff's reply to Martin's answer is immaterial, impertinent, or scandalous. Federal Rule of Civil Procedure 7(a) provides that a reply to an answer is permitted only "if the court orders one." The court did not order that plaintiff file a reply to Martin's answer. Thus, the court GRANTS Martin's motion to strike plaintiff's reply to his answer. See Hazel v. McElvogue, No. 0:09-2405-SB-PJG, 2010 WL 2484003, *1-2 (W.D.N.C. Apr. 2, 2010) (unpublished).

E.   Motion for Summary Judgment

1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2. Analysis

Plaintiff alleges that defendants violated his Fourteenth Amendment[5] rights because they were deliberately indifferent to his medical needs. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" See Strickler, 989 F.2d at 1379 (quotations omitted).

Defendants concede that plaintiff is able to satisfy the objective prong of the Eighth Amendment test. Accordingly, the court will begin its analysis with the second prong of the Eighth Amendment test—whether defendants acted with deliberate indifference to plaintiff's serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). A disagreement

---

[5] Plaintiff is a pretrial detainee. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). However, as a practical matter, the contours of the Due Process Clause are coextensive with the substantive constitutional principles applied by the Eighth Amendment to convicted inmates. See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992). Accordingly, plaintiff's Fourteenth Amendment Due Process claims will be analyzed under the Eighth Amendment.

8

between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998); Sosebee v. Murphy, 797 F.2d 179, 181-82 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977).

a. Deliberate Indifference Claim Against Nichols

Plaintiff alleges that the arresting officer, Nichols, was deliberately indifferent to his serious medical needs because Nichols refused his requests for medical attention at the time of his arrest, and instructed him to "shut up before he hurt [his] other arm." (Compl. p. 1.) In response, Nichols submitted an affidavit stating that plaintiff did not mention hurting his arm during the course of plaintiff's arrest. (Nichol's Aff. ¶ 12.) Nichols further states that he was unaware that plaintiff had been hurt. (Id.)

A genuine issue of material fact is created where the parties present affidavits that contradict each other on material facts. See Sigman v. Town of Chapel Hill, 161 F.3d 782, 791-92 (4th Cir. 1998). Here, the parties have presented such affidavits, and assuming plaintiff's allegations to be true, they are sufficient to state a claim for deliberate indifference to his serious medical needs. See Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978); Hunt v. Sandhir, 2008 WL 4442159, 295 Fed. Appx. 584, 586 (4th Cir. Sept. 29, 2008) (unpublished). Therefore, there is a genuine issue of material fact with regard to whether Nichols acted with deliberate indifference to plaintiff's medical needs in violation of the Eighth or Fourteenth Amendments.

b. <u>Deliberate Indifference Claim Against Martin</u>

Plaintiff also alleges a deliberate indifference claim against Martin, the jail administrator for the Bladen County Jail, based upon the care he received while incarcerated at the Bladen County Jail. The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires state officials to provide medical care to detainees who have been injured during the course of an arrest. <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 244 (1983).

Bladen County Jail's medical provider notes indicate that plaintiff complained about wrist pain at the jail on December 10, 2006, and that the nurse instructed jail officials to provide him with an ice pack and to give him two Motrin for his pain. (Def.s' Mem. Ex. I.) The notes also reflect that a medical appointment was set for the following day. (<u>Id.</u>) The notes further reflect that plaintiff refused to be taken to the Bladen County Hospital Emergency Department on December 10, 2006. (<u>Id.</u>) Plaintiff's medical records indicate that he subsequently was taken to the Bladen County Hospital Emergency Department on December 11, 2006, and diagnosed with a fractured wrist. On December 12, 2006, jail officials transported plaintiff to Atlantic Orthopedics. The medical staff at Atlantic Orthopedic diagnosed plaintiff with a fractured left forearm, and recommended that he have surgery to repair the fracture. (<u>Id.</u> Ex. H, p. 19.) On December 13, 2006, plaintiff was released on bond. Plaintiff signed a document stating that he received an injury to his left arm and right eye in the course of his arrest on December 10, 2006. (<u>Id.</u> Ex. E.) The document further stated:

> I understand that I refused to go to Bladen County Hospital ED on my o[wn] accord on December 10, 2006 for treatment of my arm after being offered by [O]fficer Jones and [t]he Elizabethtown Police Department. I accept full responsibility for my health care upon my release from jail and will seek medical and surgical intervention as soon as I am released knowing that I have been advised by Atlantic

10

> Orthopedics to have surgery on my forearm within one and one and a half week time.

(Id.)

Subsequent to his release, plaintiff went to Atlantic Orthopedic, but did not make arrangements to obtain surgery on his arm. (Id. Ex. K pp. 48-49.) Plaintiff testified in his deposition that he returned to Atlantic Orthopedic following his release from custody, and that Atlantic Orthopedic informed him that he needed medical insurance for treatment. (Id. Ex. K p. 43.) Plaintiff was in the process of obtaining medical insurance through the Department of Social Services when he was re-arrested and taken into custody on January 10, 2007. (Id. Exs. K pp. 48-49 and J.) Upon his re-entry into custody, the jail physician repeated his x-rays and re-assessed his condition the next day. (Id.) Plaintiff was transferred to Central Prison for medical care on the following day. (Id. Ex. F.)

The above-stated facts do not support the conclusion that Martin knowingly disregarded plaintiff's serious medical needs, and plaintiff has not presented any evidence to the contrary. Rather, the evidence in the record demonstrates that plaintiff saw the Bladen County Jail physician Dr. Creed, a jail nurse, the staff at Bladen County Hospital, and a medical care provider at Atlantic Orthopedics between the dates of December 10, 2006 and December 13, 2006. (Def.s' Mem. Ex. K p. 45.) The record further reflects that plaintiff refused medical care during the relevant time period. The court can rely on prison medical records in ruling on a motion for summary judgment concerning whether an inmate has received adequate medical care. See Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp.2d 525, 530 (D.Md. 2001). Finally, the evidence in the record reflects that plaintiff

11

agreed to assume responsibility for his medical care upon his release from incarceration. In fact, plaintiff specifically agreed to seek medical treatment and surgical intervention for his injuries. (Def.s' Mem. Ex. E.) There is no evidence that Martin knew that plaintiff would have difficulty obtaining care upon his release. Accordingly, the evidence in the record establishes that Martin provided plaintiff with medical care while he was incarcerated at the jail, and conditioned plaintiff's release upon plaintiff's agreement that he seek immediate medical attention. Based upon the foregoing, plaintiff has not established that Martin knowingly disregarded plaintiff's injuries. Accordingly, plaintiff has not established that Martin acted with deliberate indifference to his medical needs, and he is unable to establish the subjective prong of the Strickler test. Because plaintiff is unable to establish the subjective prong of the Strickler test, he is unable to establish an Eighth or Fourteenth Amendment claim.

  c. Excessive Force

Plaintiff alleges that Nichols used excessive force in the course of his arrest. The Fourth Amendment's prohibition on unreasonable searches and seizures encompasses the right to be free of "seizures effectuated by excessive force." Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006). Whether a degree of force is reasonable is measured "by a standard of objective reasonableness." Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002). Courts accordingly inquire "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397 (1989).

Applying the test of objective reasonableness requires courts to give "careful attention to the facts and circumstances of each particular case." Id. at 396. The reasonableness of an officer's use of force is a fact-bound question, which turns on the "totality of the circumstances." Young v. Prince

George's County, 355 F.3d 751, 757 (4th Cir. 2004). Determining "what a 'reasonable officer on the scene' would have done" thus depends on a careful weighing of all of the relevant facts. Sigman v. Town of Chapel Hill, 161 F.3d 782, 787 (4th Cir. 1998) (quoting Graham, 490 U.S. at 396). In other words, courts determining whether an application of force is objectively reasonable must consider " 'the totality of the circumstances,' " which includes (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the officer or others, and (3) whether the suspect was attempting to resist or evade arrest. Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 9 (1985)). With all of the relevant circumstances before it, a court may then properly balance an individual's Fourth Amendment interests and the government's countervailing law enforcement concerns. See id.

Here, Nichols submitted an affidavit stating that plaintiff ran when approached. (Nichols Aff. ¶ 7.) Nichols further states that he then pursued plaintiff on foot, and that he caught up with plaintiff as plaintiff was climbing over a fence. (Id. ¶¶ 7-9.) Nichols states that he pulled plaintiff off the fence, and that plaintiff fell on top of him. (Id. ¶ 9.) Nichols asserts that he and plaintiff rolled around and struggled on the ground until he could handcuff plaintiff. (Id.) Nichols further asserts that the only force he used was pulling plaintiff off of the fence and struggling with him to apply handcuffs. (Id. ¶ 10.) Plaintiff, however, asserts in his sworn deposition that Nichols "braced" his knee into his left arm while he was in handcuffs, breaking his arm. (Def.s' Ex. K, p. 13.) Plaintiff further states that Nichols had a gun pointed at him during the alleged incident. (Id.)

Plaintiff's allegations contradict the statements made in the affidavit submitted by Nichols. Under the facts of the case as proffered by plaintiff, no immediate threat existed to Nichols at the time of the alleged assault because plaintiff was in handcuffs. Moreover, under plaintiff's version

13

of the facts, his ability to resist arrest was limited because he was in handcuffs. Accordingly, the totality of the circumstances indicates that the use of force necessary to break plaintiff's arm in response to plaintiff's alleged theft of steaks was unreasonable. A genuine issue of material fact is created where the parties present affidavits that contradict each other on material facts. See Sigman v. Town of Chapel Hill, 161 F.3d 782, 791-92 (4th Cir. 1998). Here, the parties have presented such affidavits. Therefore, there is a genuine issue of material fact with regard to whether Nichols used excessive force in violation of the Fourth Amendment.

F. Motion for reconsideration

Plaintiff requests that the court reconsider its denial of his request for counsel. It is well-established that there is no constitutional right to counsel in civil cases. See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The Fourth Circuit has held that courts may be required to request counsel for *pro se* litigants in "exceptional circumstances." Whisenant v. Yaum, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by, Mallard v. U.S. District Court for the Southern Dist. of Iowa, 490 U.S. 296 (1989). The existence of exceptional circumstances depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Id. (citing Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982)). The court finds that the facts and circumstance of this case warrant appointment of counsel in this case. Thus, plaintiff's motion for reconsideration is GRANTED. The court appoints North Carolina Prisoner Legal Services ("NCPLS") to represent plaintiff in this action.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 43) is GRANTED in part and DENIED in part. Martin's motion is GRANTED with respect to plaintiff's claim for deliberate indifference to his serious medical needs. The motion is DENIED with respect to plaintiff's remaining claims against Nichols. Plaintiff's motion for reconsideration (DE # 54) is GRANTED, and the court appoints NCPLS to represent plaintiff in this action. NCPLS is DIRECTED to enter a notice of appearance in this action within twenty-one (21) days. Plaintiff's motion to set a date for trial (DE # 53) is DENIED as premature, and his motion for entry of default (DE # 55) is DENIED. Plaintiff's request for alternative dispute resolution (DE # 59) is DENIED. Finally, the motion to strike plaintiff's motion for entry of default (DE # 57) and motion to strike plaintiff's request for alternative dispute resolution (DE # 63) are DENIED as moot. The motion to strike plaintiff's motion in reply (DE # 64) is GRANTED.

SO ORDERED, this 24th day of February, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge